UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRANDON J. GIBSON,

        Plaintiff,                       Case No. 2:12-cv-1128
                                               JUDGE SMITH
                                               Magistrate Judge Kemp

      v.

SHERIFF ZACH SCOTT, *et al.*,

        Defendants.


**OPINION AND ORDER**

        This matter is before the Court on Plaintiff Brandon J. Gibson's Motion for Award of Attorney Fees and Costs (Doc. 5).  The motion is briefed and ripe for disposition.  For the reasons that follow, the Court **GRANTS in part** Defendant's motion.

**I.**      **Background**

        On August 11, 2011, two officers of the Franklin County Sheriff's Department, without a warrant, consent, or the presence of exigent circumstances, entered Plaintiff's home and forcibly arrested him without cause.  The officers also caused charges to be filed against Plaintiff without cause.  As a result of that conduct, Plaintiff initiated this action on December 7, 2012, pursuant to 42 U.S.C. § 1983, against Defendant Zach Scott, in his official capacity as Sheriff of Franklin County, Ohio, Defendant Franklin County Deputy Sheriff Candy Clark, in her individual capacity, and Defendant Franklin County Sergeant Joshua Short, in his individual capacity.  Plaintiff alleged various civil rights violations, including asserting that Defendants illegally entered his home, arrested him without probable cause, caused charges to be filed against him

without probable cause, and used excessive force.  Plaintiff also alleged that the constitutional violations committed by Defendants Clark and Short were proximately caused by customs, policies and practices existing within the Franklin County Sheriff's Department, and under Defendant Sheriff Scott.

In February 2013, and pursuant to Federal Rule of Civil Procedure 68, Defendants served an offer to allow judgment to be entered in favor of Plaintiff and against Defendants, in the amount of $35,000 in damages for all of Plaintiff's claims for relief.  The Offer of Judgment specified that Plaintiff shall be entitled to an award of costs, including attorney fees, in an amount to be determined by the Court, as if Plaintiff had secured judgment against Defendants following a trial of this action on the merits.  Plaintiff accepted the Offer of Judgment, and filed both his Notice of Acceptance and the Offer of Judgment with this Court pursuant to Rule 68.  Plaintiff then filed his Motion for Award of Attorney Fees and Costs, which is fully briefed and ripe for disposition.

**II.     Discussion**

Under the "American Rule," parties must generally pay their own attorney's fees regardless of the ultimate outcome of a case.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010).  Various federal statutes, however, alter the default approach.  *Id.*  As applicable here, Congress enacted 42 U.S.C. § 1988 as an exception to the "general rule in our legal system . . . in order to ensure that federal rights are adequately enforced."  *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010) (internal citations omitted).  Pursuant to § 1988, in certain civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  *See* 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*,

2

461 U.S. 424, 426 (1983). A party seeking attorneys' fees under a fee-shifting statute such as § 1988 bears the burden to show that he or she is entitled to the amount requested. *Hensley*, 461 U.S. at 433; *Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 242 (1985).

When considering a motion for attorneys' fees, a court must first determine whether the petitioning party was the prevailing party. *Hensley*, 461 U.S. at 433. A court next determines what fee is "reasonable." *Id.* "The starting point for determining the amount of reasonable attorney fees is the 'lodestar amount' which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) ("[A] district court begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." (internal quotation marks and citation omitted)). The resulting sum may be adjusted to reflect factors such as the "results obtained." *Hensley*, 461 U.S. at 434 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 621 (6th Cir. 2007). In exceptional circumstances, an upward adjustment of the lodestar amount may be appropriate. *See Blum v. Stenson*, 465 U.S. 886 (1984). Such an adjustment is only permissible if "the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged" and the success was "exceptional." *Id.* at 889. "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge." *Perdue*, 559 U.S. at 558.

In reaching a determination as to the proper amount of reasonable attorneys' fees to

award in a particular case, the court may implement an "across-the-board reduction by a certain percentage as an alternative to line-by-line reductions." *Project Vote v. Blackwell*, No. 06–CV–1628, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005)). In this process of determining reasonable attorney's fees, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). "There is no precise rule or formula for making these determinations[.]" *Hensley*, 461 U.S. at 436. Ultimately, however, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination . . . Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Perdue*, 559 U.S. at 558-59.

Plaintiff's counsel, James McNamara, avers that he has expended a total of 169.90 hours in this litigation. And Plaintiff requests a rate of $450 per hour for the work of his counsel. Therefore, Plaintiff's lodestar fee request is 169.90 hours of work, at $450 per hour, for a total of $76,455. Plaintiff argues that the number of hours expended by his counsel is reasonable, and that his counsel's hourly rate is also reasonable. Additionally, Plaintiff seeks a 30 percent enhancement of the requested lodestar amount. Plaintiff argues that an upward adjustment of 30 percent is proper in this case considering how his counsel handled this case. Plaintiff argues that

4

his counsel took steps to avoid protracted litigation, which benefits the lawyers, the Court, and the public at large.

Defendants argue that many of the hours expended by counsel were unnecessary and should not be compensated. Defendants assert that Plaintiff's counsel's time spent preparing a settlement brochure, which he submitted to the Franklin County Sheriff before filing the lawsuit, should not be compensated. Defendants also challenge the compensation request for counsel's travel time, the amount of time related to public records research and requests, the amount of time spent on legal research, and other unnecessary tasks. Defendants also argue that Plaintiff's counsel seeks compensation at an attorney rate for administrative tasks, such as organizing the file, getting checks, and copying and sending documents. Defendants generally argue that Plaintiff's counsel's use of "block billing" has compounded these problems. Finally, Defendants argue that Plaintiff's upward adjustment request is inappropriate and would result in a windfall to Plaintiff's counsel.

### A. Reasonableness of Hourly Rate

Plaintiff's counsel requests an hourly rate of $450, and he submits his own affidavit and the affidavits of other attorneys, namely John Marshall, Michael Rourke, and Fred Gittes, who all support his hourly rate of $450. Plaintiff's counsel, Mr. McNamara, also refers the Court to another case in the Southern District of Ohio in which the Court approved his request for compensation at $400 per hour in a § 1983 action, specifically finding as credible the opinions of respected litigators Messrs. Marshall, Rourke, and Gittes. *See McConaha v. City of Reynoldsburg*, No. 2:06-cv-419 (S.D. Ohio July 2, 2008) (Frost, J.). Defendants argue that Plaintiff's hourly rate request of $450 per hour is unreasonable, and they submit affidavits of two

5

attorneys with knowledge of the legal marketplace in Columbus and familiarity with the billing practices of attorneys advancing civil rights actions, who indicate that the hourly rate for partners in their firms are substantially less than that requested by Mr. McNamara.

It is undisputed that Plaintiff's counsel is an excellent attorney with decades of experience litigating civil rights matters. Such experience commands a premium hourly rate. Furthermore, the Court will not reach a conclusion that implicitly undermines a previous decision of this Court specifically finding that $400 is a reasonable hourly rate for Mr. McNamara. However, the Court is not convinced that an increase to $450 per hour is consistent with the prevailing market rate. Therefore, the Court finds that Mr. McNamara has demonstrated that the prevailing market rate for someone with his skill, experience, and reputation is $400 per hour.

Despite reaching this finding as to a reasonable hourly rate, the Court is mindful that Plaintiff's counsel's billing statement contains all types of work consistent with prosecuting a case, from purely secretarial and non-legal services, to services that can be performed by a paraprofessional, to work properly handled by an attorney. The Court is not condemning Plaintiff's counsel's decision not to have a support staff, but believes this circumstance should be considered in determining the appropriate amount of attorney's fees to award in this case. In other words, while Plaintiff's counsel's experience may command $400 per hour for his legal services, he should not be compensated at $400 per hour for work that readily may be completed by a paralegal, or for purely secretarial and non-legal services. For this reason, and for additional reasons expressed below, the amount of attorney's fees awarded will be substantially less than the amount Plaintiff requests.

### B. Reasonableness of Hours Billed

As noted above, Plaintiff's counsel seeks compensation for purely secretarial and non-legal services. Plaintiff's counsel has attempted to bill for time associated with non-legal services, such as "organiz[ing] file," "get check for public records," "copy and send documents to client," and "get notebooks and dividers." (*See* McNamara Billing Statement, Doc. 18-1). The Court will not award attorney's fees for these services, as purely clerical or secretarial tasks should not be billed (even at a paralegal rate), because "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 437; *see Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). A "purely clerical or secretarial" activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead. *Holmes v. Astrue*, No. 3:08–1829, 2010 WL 3220085, *2 (D.S.C. Aug. 12, 2010) (citing *Jenkins*, 491 U.S. at 288 n.10); *see Shaffer v. Colvin*, No. 4:12-CV-3121, 2014 WL 185779 (N.D. Ohio Jan. 16, 2014) (noting the distinction between billable legal work and non-billable clerical work).

It is not clear how many hours Plaintiff's counsel is attempting to bill for purely clerical or secretarial tasks because of his use of "block billing." Block billing involves identifying more than one task in a single billing entry, and Plaintiff's counsel's fees statement contains numerous block billing entries. Block billing is not *per se* improper as the underlying question is whether the fee is reasonable. *See Pittsburgh & Conneaut Dock Co. v. Director, Office of Workers' Compensation Programs*, 473 F.3d 253, 273 (6th Cir. 2007) (holding that the proper question is whether the fee is reasonable and noting that other "circuits have rejected block-billing objections to fee awards in a number of contexts."). However, block billing becomes

7

problematic in determining the reasonableness of fees when, as is the case here, counsel works on the case by himself, apparently with no administrative or paralegal support staff.

Because block billing does not provide detail as to how much time was spent on each particular task, Plaintiff's counsel's use of block billing makes it inherently difficult to determine the reasonableness of his billing entries.  Particularly, some of the billing entries contain clerical work, activities generally performed by legal assistants, and attorney work.  Thus, Plaintiff's counsel's block billing has resulted in various types of work, requiring different levels of skill, being included on the same entries.  In response to Defendant's opposition brief, which pointed out this billing deficiency, Plaintiff's counsel did assign more detailed time allocations, but there remain numerous entries without detailed apportionment.  For example, the entry for August 13, 2012, states: "1.70 [hours:] Finish draft of complaint, organize exhibits, pull my hours, call to client," and the entry for September 5, 2012, states:  "2.20 [hours:] Get replacement notebooks, work on notebooks, call Crystal, call from client, do cover letters."  (Doc. 18-1).  As a result, the Court cannot, with line-item precision, determine the total amount of time Plaintiff's counsel has billed for purely clerical or secretarial tasks.  Nonetheless, the Court will consider this circumstance in determining the appropriate reduction to the requested award.

Other factors necessitate a significant reduction in the number of hours allowed.  In particular, the Court finds that Plaintiff's counsel spent excessive hours working on a "settlement brochure" and conducting legal research, considering the relatively straightforward facts of this case.  Plaintiff's counsel spent approximately 38 hours working on the 150-page settlement brochure that was delivered to the Franklin County Sheriff's Office in September 2012.  The settlement brochure contained Plaintiff's settlement proposal (which included a demand for

$290,000, including attorney's fees), a draft complaint, a 47-page narrative discussion of Plaintiff's claims against Defendants, an affidavit of Plaintiff, an affidavit of Plaintiff's girlfriend who witnessed the events on August 11, 2011, an affidavit of a former officer of the Franklin County Sheriff's Department who also witnessed the events on August 11, 2011, and miscellaneous attachments, including copies of the criminal complaint filed against Plaintiff and other official documents pertaining to Plaintiff's arrest and charging.  Three months after delivering the settlement brochure, Plaintiff initiated this action, and two months after that, Defendants served their offer of judgment, which Plaintiff accepted.  Thus, the case did not proceed beyond the Complaint.

Plaintiff reasons that this case was resolved quickly after the filing of the Complaint primarily due to his counsel's strategy of gathering all accessible pertinent information and then presenting the Defendants with the 150-page settlement brochure prior to even filing the Complaint.  Defendants assert that their counsel did not examine the settlement brochure until the Complaint was filed, in December 2012, and that it added nothing because, by the time the Complaint was filed, counsel for Defendants knew the facts of the case and had decided to effect a strategy to "quickly resolve a bad case and minimize the costs." (Defs.' Mem. in Opp., at 9, Doc. 11).  Defendants assert that the settlement brochure had "zero bearing on defense counsel's and the Defendants' decision to make an offer of Judgment." *Id.*  The Court does not agree with Defendants' contention that no time spent on the settlement brochure should be compensated because they would have settled the case regardless of receiving the document.  It was certainly reasonable for Plaintiff's counsel to submit a settlement proposal to Defendants in an effort to resolve this matter early.  However, considering the straightforward facts of this case, a majority

of the time spent on the document was unreasonable and will not be allowed.

Plaintiff's counsel spent approximately 30 hours conducting legal research in this case, which was unreasonable.  Plaintiff's counsel concedes that this case "[f]rom a purely technical, legal perspective . . . presented a fairly standard series of issues[.]"  (McNamara Aff. at ¶ 9).  Despite this concession, Plaintiff's counsel does not explain why an attorney, with his exceptional experience litigating civil rights cases, including police misconduct matters, would need more than a few hours of legal research in this matter.  Plaintiff plainly had the facts and law on his side.  While it was appropriate for Plaintiff's counsel to thoroughly investigate the matter prior to filing the Complaint, and to inquire into whether any recent update or change in his area of practice could be at least potentially applicable, Plaintiff's counsel does not explain the necessity of the extent of his legal research.  Accordingly, a majority of the requested hours for legal research will not be allowed.

The Court will also disallow a majority of the requested compensation for travel time.  Plaintiff's counsel seeks compensation for travel to the Plaintiff's residence (the location of the arrest) on multiple occasions, to the offices of the attorneys who provided affidavits in support of his fee request, and to The Ohio State University law library.  Plaintiff's counsel does not explain the necessity of his trips.  For example, he does not explain why he did not use electronic means to correspond with others, to conduct all of his legal research, or why he needed to go to the location of the arrest on multiple occasions.  Therefore, he has not shown that he should be compensated for all of the time associated with those trips.  *See Stahl v. Taft*, No. 2:03-CV-597, 2006 WL 314496 (Feb. 8, 2006) (Smith, J.) (excluding requested travel time from compensation because the plaintiffs failed to establish the necessity of the travel).  Like other tasks, Plaintiff's

counsel's use of block billing makes it difficult to ascertain the amount of time requested for travel. Nonetheless, the Court will consider this circumstance in determining the appropriate reduction.

Finally, many of the activities billed by Plaintiff's counsel are activities that could have been performed by a paraprofessional. For example, many tasks relate to counsel's investigation of the facts and gathering of evidence. Additionally, Plaintiff's counsel has billed for frequent correspondences with Plaintiff and other persons involved in the matter. Considering the absence of any support staff for Plaintiff's counsel, it is likely that many of these correspondences involved status inquiries and updates and other discussions not involving the dispensing of legal advice. Plaintiff's counsel clearly has billed at his full attorney rate for tasks that, while reasonably necessary, are more administrative or investigative in character and that could have been performed by a non-attorney. Such tasks should not be billed at a premium attorney rate, or even an attorney rate. As noted by the Supreme Court, "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Jenkins*, 491 U.S. at 288 n.10 (quoting *Johnson*, 488 F.2d at 717).[1]

Therefore, although still compensable, the Court will not award Plaintiff's counsel $400 per hour for activities that could have been performed by a non-lawyer. Because of Plaintiff's

---

[1] Activities that are properly performed by a paralegal include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id.*

counsel's block billing, the Court cannot separate work that could have been done effectively by a non-attorney under supervision, with such tasks as drafting the Complaint and briefs on the attorney's fees issue. In lieu of attempting to assign each particular task a designation, and then assigning a discounted rate to the work that could have been done by a paralegal, the Court will take this circumstance into consideration in determining the appropriate across-the-board reduction.

Based on the foregoing, the Court will apply a 70 percent across-the-board reduction to the number of hours requested, for a recalculated total of 50.97 hours (169.90 hours reduced by 70 percent). At $400 per hour, the total award of attorney's fees is $20,388. The reduction takes into account the relatively straightforward facts of this case, Plaintiff's counsel's extensive experience litigating civil rights matters and the corresponding expectation that such experience should require less research on relatively straightforward legal issues, the fact that many of the hours were billed at a premium attorney rate for investigatory conduct, the fact that a number of hours billed were for purely secretarial and non-legal tasks, the fact that Plaintiff's counsel billed for unnecessary tasks, and finally the fact that this case was settled before progressing any further than the filing of the Complaint.

### C. Expenses

In addition to requesting attorney's fees, Plaintiff requests compensation for other litigation costs, primarily in the form of out-of-pocket expenses. An award of costs, under fee shifting civil rights statutes, includes out-of-pocket expenses that are reasonably incurred by an attorney and normally passed on to a fee-paying client. *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984). The requested out-of-pocket expenses total $657.76, and include the filing fee

for the lawsuit, payment for public records, copies, postage, and other expenses.  Defendants do not challenge the request for an award of these costs to Plaintiff in this case.  Therefore, these out-of-pocket expenses will be awarded to Plaintiff.  Adding the requested $657.76 in expenses to the allowed amount of attorney's fees, $20,388, results in a total award of $21,045.76.

### III.  Conclusion

For the forgoing reasons, the Court **GRANTS in part** Plaintiff Brandon J. Gibson's Motion for Award of Attorney Fees and Costs (Doc. 5).  Defendants shall pay Plaintiff's counsel, Attorney James McNamara, a total of $21,045.76 in attorney's fees and other costs.

The Clerk shall remove Document 5 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

  *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**